ALPENA POWER CO. *v.* CALEDONIA TOWNSHIP.

TAXATION—VALUATION—SURROUNDINGS—ACTUAL CASH VALUE.
  Where plaintiff owned and operated a power plant and dam in the city of Alpena, and also owned 31 acres in defendant township on which was erected a dam which it used ·in connection with said power plant, the nearness of said dam to the power plant below was properly taken into consideration in fixing its value for purposes of taxation, under Article 10, § 7, Const., and sections 3825, 3850, 1 Comp. Laws (1 Comp. Laws 1915, §§ 3996, 4021), which should be its actual cash value, hence, in a suit to recover excess tax paid under protest because so valued, a verdict was properly directed for defendant.

Error to Alcona; Widdis, J. Submitted October 20, 1916. (Docket No. 25.) Decided March 29, 1917.

Assumpsit by the Alpena Power Company, Ltd., against the township of Caledonia for the recovery of taxes paid under protest. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Henry & Henry,* for appellant.

*Joseph H. Cobb,* for appellee.

BIRD, J. This proceeding is one in assumpsit to recover certain taxes paid by the plaintiff to the defendant township under protest in 1914. The proofs made an issue of law, and a verdict was directed in favor of defendant.

The plaintiff owns and operates a power plant and dam on Thunder Bay river in the city of Alpena. It is also the owner of 31 acres of land in defendant township in Alcona county situated on a tributary to Thunder Bay river. This tributary is the outlet of Hubbard Lake, a body of water having an area of 14 square miles. A dam has been erected on this tract which is capable of holding back the water in Hubbard Lake to a height of five feet above the normal level. When the water is low in Thunder Bay river this water is released, with the effect that it produces a uniformity in the volume of water which reaches the plaintiff's plant, and also an intervening one, owned by the Fletcher Paper Company. In 1914 the assessment was fixed at $6,000. It appeared that the land and dam, if valued independently of their use, location, or natural advantages, were not worth to exceed $2,000. Appellant states its position as follows:

"The reservoir dam and lot upon which it is situated in Caledonia township should be assessed at its actual physical value only. In using the phrase 'actual physical value' we mean fair cash value of the land in lot 2 and the fair cash value of the structure which comprises the dam, apart from the added benefit to the power plant in Alpena. An assessment, taking into

consideration such added benefits and the increased value to the power plant in Alpena, is illegal."

The premises assessed are real property, and are situate in defendant township, and therefore should be assessed therein (1 Comp. Laws, § 3826 [1 Comp. Laws 1915, § 3997]), and should include:

"All buildings and fixtures thereon, and appurtenances thereto, except such as are expressly exempted by law." 1 Comp. Laws, § 3825 (1 Comp. Laws 1915, § 3996).

And the premises should be assessed at their actual cash value. Constitution of Michigan, art. 10, § 7.

The legislature has aided the assessing officer by indicating some of the elements which may be taken into consideration in arriving at values for the purpose of taxation:

"The words 'cash value,' whenever used in this act, shall be held to mean the usual selling price at the place where the property to which the terms applied shall be at the time of assessment, being the price which could be obtained therefor at private sale, and not at forced or auction sale. In determining the value the assessor shall also consider the advantages and disadvantages of location, the quality of soil, quantity and value of standing timber, water power and privileges, mines, minerals, quarries or other valuable deposits known to be available therein and their value." 1 Comp. Laws, § 3850 (1 Comp. Laws 1915, § 4021).

Applying these statutory rules to the facts in the case, we have little difficulty in reaching the conclusion that the assessment should be sustained.

The supervisor testified that in his opinion the property was worth more and would sell for more than $6,000. He concedes, however, that in determining the value he took into consideration the benefit derived from the nearness of the power plants below. He had a right to consider this, as it was helpful in determining its earning power—an essential element always

taken into consideration in arriving at the selling price. He had a right to take into consideration the fact that these premises were utilized to create a reservoir of Hubbard Lake, and to thereby imprison 2,000,000,000 cubic feet of water in excess of its natural capacity, and he had a right to take into consideration the proximity of this reservoir to the power plants below and the advantages resulting therefrom. If these premises were owned by a third party and were for sale, there is no reasonable probability under the proofs that the power plants down stream would permit them to pass to other hands for a sum less than $6,000.

The supervisor's judgment that the premises were worth $6,000 was approved by the board of review, and plaintiff's counsel admitted in open court that their client would not part with the title thereto for a consideration of $10,000, but counsel explain that its value lies in the added water power which is furnished to the plaintiff's plant at Alpena; that the water has no value until it is converted into power, and the power is not created until the water reaches the water wheels at the plant in Alpena. We think it is unnecessary in this proceeding to determine whether the value of the water power should be attached to the Hubbard Lake dam or to the power plant at Alpena, or whether it should be apportioned to each upon some reasonable basis. The testimony does not indicate that the supervisor has included the value of the water power in his determination. He appears to have considered the physical value of the real estate and dam in connection with their surroundings as he is enjoined to do by the statute, and has concluded that the value thereof was $6,000. There is nothing in the record to indicate that the assessment upon this basis is too high, but there is much in the record to indicate that its real value is much beyond the sum

194—Mich.—40.

fixed by the supervisor. For a similar case on the facts supporting this view, see *Pingree* v. *County Commissioners*, 102 Mass. 76.

The view taken by the trial court was the proper one, and the judgment will be affirmed.

KUHN, C. J., and STONE, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.